THE STATE ex rel. CURATORS OF UNIVERSITY OF MISSOURI v. H. C. WALKER, Collector of Clinton County.

In Banc, March 1, 1912.

1. CITATION: Technical Meaning: When Not Given. The word "cited" is a technical word, and a "citation," in its technical sense, is a writ issuing out of a court. It is not an original writ instituting a suit, but it issues in a matter pending in court to notify a party interested that certain proceedings in that matter are to be considered. But when a technical word is inappropriately used in a statute, and when to give to it its technical meaning would entirely defeat the purpose of the lawmaker, it will not be given that meaning, if another meaning can with reasonable certainty be gathered from the whole context and the purpose of the statute be thereby effected. Accordingly the word "cited" used in the statute in this case is *held* to mean "notice by mail."

2. ————: ————: Collateral Inheritance Tax: Collector Notified by Mail: Cited. Section 322, Revised Statutes 1909,

provides that under certain conditions, the probate court shall "appoint a compctent person as appraiser, to fix the value of estates" subject to the payment of a collateral inheritance tax, and "every such appraiser shall forthwith give notice by mail to all persons known to have a claim or interest in the property to be appraised, including the county collector of revenue, and to such persons as the probate judge may by order direct, of the time and place when he will appraise such estate or property." Section 329 provides that "in proceedings to which any county collector is cited as a party under section 322, the State Auditor is authorized, in his discretion, to designate and retain counsel to represent such county collector therein, and to direct the county collector to pay the expenses thereby incurred out of the funds which may be in his hands on account of this tax." *Held*, that the word "cited" used in section 329 should not be given the technical meaning of being served with a writ of citation, but the statute means that the State Auditor has authority to employ counsel whenever the county collector has been given notice by mail. One technical meaning of "cited" is "notified of a legal proceeding."

3. **ABUSE OF POWER: Legislative Matter.** The argument that the power given by statute to the State Auditor to appoint an attorney to represent the county collector at the appraisement of an estate for the assessment of an inheritance tax and to fix his compensation, is a power that may be abused, is an argument that should be addressed to the Legislature. It does not affect the validity of the statute.

4. **COLLATERAL INHERITANCE TAX: Expense of Collecting: Attorney's Compensation: Constitutional.** That part of Sec. 329, R. S. 1909, authorizing the State Auditor, in his discretion, when a county collector is notified to appear at the appraisement of the property of a decedent for the assessment of an inheritance tax, to appoint an attorney to represent the collector at the appraisement, to fix his compensation and to direct its payment out of the tax fund in the collector's hands, is not in violation of section 43, article 4, of the Constitution, which says that "all revenue collected and moneys received by the State from any source whatsoever shall go into the Treasury, and the General Assembly shall have no power to divert the same, or to permit money to be drawn from the Treasury except in pursuance of regular appropriations made by law." If a literal construction of that constitutional provision would forbid the holding back from the tax collected a reasonable compensation for the attorney's services, it would also require a county collector to pay into the State Treasury the whole of any state property or license tax collected by

State ex rel. v. Walker.

him, not permitting him to withhold his own commissions The history of the revenue law at the time the Constitution was framed and for many years prior thereto, shows that its framers did not mean by this section that the necessary expense of collecting a tax was to be paid into the State Treasury.

5. ———: ———: ———: ———: **Fixed Fees.** Nor does the Constitution make any distinction between fixed fees for collecting a tax and fees which are not fixed by statute. Neither can be retained by the officer earning them if the words of the Constitution are to be literally followed; but a literal interpretation was not contemplated by its framers as to either fixed fees or fees to be fixed; their purpose was that the necessary expense of collecting a tax should be retained by the officer rendering the necessary service, and the balance should be paid into the Treasury.

## Mandamus.

WRIT DENIED.

*F. C. Donnell* and *E. W. Hinton* for relator.

(1) The provisions of Sec. 329, R. S. 1909, that "in proceedings to which any county collector is cited as a party under section 322" the State Auditor is authorized, in his discretion, to retain counsel, and to direct the county collector to pay the expenses thereby incurred, furnishes no authority for the deduction of attorney fees in this case, because the mere notice by the appraiser to the collector of the time and place of the appraisement is not a citation of the collector as a party. 1 Bouvier, p. 326; Bacigalupo v. Supreme Court, 40 Pac. 1055. The statute does not confess or attempt to give the Auditor general authority to employ and pay counsel, but only in pro-ceedings to which the collector is cited as party. Unless, therefore, there was a citation of the collector as a party to some proceeding for the collection of the tax on the Allen estate, the employment and payment of counsel was not authorized by the terms of the act. The term "citation" has a well-defined legal

significance. It is a writ or process issued by a judicial tribunal, commanding the party therein named to answer to some charge or matter, or to show cause why some judicial action should not be taken. Clarkson v. Hatton, 143 Mo. 56. (2) The provisions of Sec. 329, R. S. 1909, under which the respondent seeks to justify the deduction of $174.69 as attorney fees, are unconstitutional and void because they attempt to authorize the diversion and expenditure of an indefinite amount of revenue derived from this tax, without an appropriation therefor, as required by the Constitution. Sec. 43, art. 4, Constitution; Guheen v. Curtis, 31 Pac. 805; Institute v. Henderson, 31 Pac. 714. The collateral inheritance tax is obviously a tax, and the money received by the collector on that account is certainly "revenue collected," if the language employed is to have any significance at all. State ex rel. v. Henderson, 160 Mo. 190; Guheen v. Curtis, 31 Pac. 805; State v. Burdick, 33 Pac. 125; Ristine v. State, 20 Ind. 336. In the case of a collecting officer's commissions and fees, fixed by law, it can make little practical difference whether they are settled by deduction, or are paid by appropriation, because the deduction offers no opportunity for abuse, or for an indefinite expenditure of public funds by executive authority only. But these considerations have no application to the deduction here sought to be justified. Section 329 undertakes to leave it solely to the discretion of the State Auditor to employ counsel, fix their compensation, and pay them out of whatever funds the collector may have on hands on account of this tax. Thus the exclusive legislative function of determining how public funds are to be expended is attempted to be delegated to an executive or ministerial officer, in the very teeth of the Constitution. The opportunities for abuse and favoritism are apparent. and annually amounts aggregating thousands of dollars can be diverted from the State treasury and placed beyond the

power of the Legislature without the shadow of authority except the undefined and unfettered discretion of the State Auditor. Counsel do not wish to be understood as imputing that there has been any abuse of the discretionary power sought to be conferred upon the Auditor. But they do submit that the framers of the Constitution did not intend to leave the expenditure of public money, to an indefinite amount, to any officer, and that this intention is clearly expressed in the requirement that all, not some or a part, of the revenue collected shall be paid into the State treasury, and in the emphatic limitation that the General Assembly shall have no power to divert the same.

*W. S. Herndon, Pross T. Cross* and *Perry S. Rader* for respondent.

(1) The notice to respondent, given in the manner prescribed by the statute, which is alleged in the return and admitted by the motion for judgment on the pleadings to have been so given, was a sufficient ground for the appointment by the State Auditor of Musser to act as respondent's attorney, whether or not the notice amounted to a citation in the sense that word is used in other statutes and is understood in the law. The word "cited" used in section 329 refers to "notice by mail" required by section 322. Because a person is usually cited by summons or subpoena or notice served by an officer, is no reason for holding that the Legislature may not make "notice by mail" a good citation. Besides, the sufficiency of the citation is not in the case, since respondent and his attorney appeared at the hearing, and the State Auditor is presumed to have satisfied himself that respondent had been "cited as a party" before he designated and retained Musser as counsel for respondent. R. S. 1909, art. 14, chap. 2; R. S. 1899, art. 16, chap. 1; Laws 1899, p. 328; R. S. 1909, secs. 322 and 329; Bliss's Code of New York,

sec. 12, p. 3178, and sec. 15, p. 3179; Matter of Mc-
Pherson, 104 N. Y. St. 321; Estate of Astor, 14 N. Y.
St. 480; Leavitt v. Leavitt, 131 Mass. 193; State ex
rel. v. St. Louis, 158 Mo. 505.   (2) If the words in sec.
43, art. 4, Constitution, namely, "All revenue collected
and moneys received by the State from any source
whatsoever shall go into the treasury," apply to col-
lateral inheritance taxes, then by the same token and
for the same reason they apply to all collections of
State taxes on property by county collectors, all col-
lections of State license taxes on dramshops by the
county collector, and all collections on a State license
by the county clerk to hunt game.   And if the words of
section 329, directing that the counsel for the county
collector shall be paid out of the collateral inherit-
ance tax, is invalid, because this section of the
Constitution requires the entire amount of col-
lateral inheritance taxes collected by the collector to
be paid into the State treasury, then for the same rea-
son and by the same token, the provision of section
331, permitting the county collector to retain five per
cent of the collateral inheritance taxes collected by
him, is also invalid; and the provision of section 322,
directing the *per diem* and expenses of the appraiser
to be paid out of the inheritance taxes collected by the
collector, and the provision of section 331 directing
the collector to pay one-half of all his commissions to
the probate judge, are also invalid; and the provisions
of section 11481, authorizing the county collector to
retain a certain per cent of the State license tax col-
lected from dramshop keepers, and of all property
taxes collected by him, although he is authorized by
section 11475 to deduct such commissions, are also in-
valid; and the provision of section 6577, authoriz-
ing the county clerk to retain fifteen cents for each
hunter's license issued by him "out of the money re-
ceived for each license issued," and to "pay the bal-
ance to the State Treasurer," is also invalid.   (a) It

has been the policy of this State from the beginning to permit the county collector to deduct his commissions for collecting a State tax from the amount he collected. This was the policy of the State when the Constitution of 1875 was adopted and has been ever since. R. S. 1835, secs. 33 and 34, art. 3, p. 539; R. S. 1845, secs. 49 and 54, chap. 147, p. 944; R. S. 1855, secs. 48 and 53, chap. 135, p. 1346; G. S. 1865, secs. 52 and 57, chap. 13, p. 118; secs. 144, 147 and 148, of Act of March 30, 1872; 2 Wag. Stat., p. 1187; Laws 1877, sec. 16, p. 382; Laws 1878, p. 93; R. S. 1879, sec. 6782; R. S. 1889, sec. 7637; R. S. 1899, sec. 9257; R. S. 1909, sec. 11475. (b) Constitutional provisions are to be interpreted in the light of their historical setting, and the evil which their restrictions and inhibitions on legislative power were intended to prohibit may be ascertained by considering the long public policy of the State as manifested by its statutes and prior constitutional provisions, and by the consideration, in connection with this historical setting and public policy, of the whole section of the Constitution in which the inhibition is found. Hamilton v. St. Louis County, 15 Mo. 23; State ex rel. v. William Jewell College, 234 Mo. 313; Hale v. Stimson, 198 Mo. 159; State ex inf. v. Burkhead, 187 Mo. 32; State v. Etchman, 189 Mo. 648, 662; State ex inf. v. Breuer, 235 Mo. 248; State v. Bixman, 162 Mo. 29; State ex rel. v. Cook, 178 Mo. 189; State ex rel. v. McGowan, 138 Mo. 187; State ex rel. v. Kramer, 150 Mo. 89. Constant exercise of a power by the General Assembly for a long number of years, and the acquiescence therein of the other departments of government, is persuasive argument that it possessed that power within the meaning of the Constitution. State v. Mayhew, 2 Gill (Md.), 497; Mayor of Baltimore v. Board, 15 Md. 476; Harrison v. State, 22 Md. 491; Rogers v. Goodwin, 2 Mass. 477; Opinion of Judges to House of Representatives, 20 Mass. (3 Pick.) 518; Kiersted v. State, 1 Gill & John. 248; Hays

and Richardson, 1 Gill & John. 385; Shipp v. Klinger, 54 Mo. 239; Linck v. City of Litchfield, 141 Ill. 477; State v. Gerhardt, 145 Ind. 457; Terre Haute v. Railroad, 149 Ind. 186; Kenney v. Hudspeth, 59 N. J. L. 530; Rumsey v. People, 19 N. Y. 42; Wallack v. Mayor, 3 Hun 89. (c) A statute will not be held to be unconstitutional unless it is clearly and unmistakably so. State v. Cantwell, 179 Mo. 261; State ex rel. v. Railroad, 48 Mo. 470; State v. Addington, 77 Mo. 117; Lynch v. Murphy, 119 Mo. 174; Ewing v. Hoblitzelle, 85 Mo. 69; State v. Layton, 160 Mo. 474; State v. Gregory, 170 Mo. 598; State v. Tower, 185 Mo. 79; Ex parte Loving, 178 Mo. 194; State v. Gerhardt, 145 Ind. 451. (d) The power of taxation is a legislative power, and is vested in the General Assembly, and it can enact any statute on the subject unless its power to do so is restricted or limited by the Constitution. State v. Tower, 185 Mo. 91; Ex parte Roberts, 166 Mo. 207; Morrow v. Kansas City, 186 Mo. 683; State ex rel. v. Warner, 197 Mo. 656; Ex parte Berger, 193 Mo. 26; State ex rel. v. Sheppard, 192 Mo. 506; Booth's Exr. v. Commonwealth, 130 Ky. 95; State v. Vinsonhaler, 105 N. W. (Neb.) 472. (e) It has been the policy of this State from the earliest times that the expense of collecting any tax should be taken out of the taxes collected and the balance only paid into the treasury. That was the rule, prior to the adoption of the Constitution of 1875 and has been since, as to State taxes, county taxes, city taxes, school taxes, license taxes, and special benefit assessments. State v. Alsup, 91 Mo. 172. To that rule the Legislature adhered in its very last deliverance on the subject, in authorizing the county collectors when they come to collect the taxes to pay the new capitol bonds of $3,500,000 to retain their usual commissions. Laws 1911; p. 417, sec. 2. (f) The contention of relator that the provision of section 329, giving to the State Auditor a discretion as to when he will designate and retain counsel for the county col-

lector and to direct when he exercises that discretion that the attorney be paid out of the taxes collected, distinguishes this portion of the statute from that part of section 331 authorizing the collector to retain five per cent of the taxes collected and to pay one-half thereof to the probate judge, and that that distinction renders invalid that part of the statute relating to the employment and compensation of the attorney, and renders section 331 valid, is without any solid basis of reasoning or any constitutional provision to stand upon. The provision for the employment and compensation of an attorney is a reasonable expense of collecting the tax. If it is invalid, so is the provision that authorizes the county collector to retain five per cent of the taxes collected, one-half for himself and one-half for the probate judge. So is the provision of section 322 that authorizes the appraiser to be paid three dollars per day and expenses. These are all legitimate expenses of collecting the tax, and if the provision authorizing the one is in violation of sec. 43 of art. 4 of the Constitution, so are the others. 1. The State has the right to raise up a governmental agency for the purpose of enhancing its revenues and carrying its revenue laws into effect. Land & Stock Co. v. Miller, 170 Mo. 253. 2. The fact that the State Auditor may abuse his discretion, and direct the payment of a too large sum for the services rendered by the attorney, may affect the wisdom of the statute, but not its validity, and is an objection that should be addressed to the Legislature and not to this court. This court has nothing to do with the wisdom or unwisdom of a statute. State v. Tower, 185 Mo. 97; State ex rel. v. Vandiver, 222 Mo. 217. 3. The taxing power is a legislative power, but the Legislature can authorize an executive officer to fix the compensation for services rendered the State and even to determine the amount of tax. Thus, the statute from time immemorial has authorized the county court to fix the compensation

of the county treasurer. R. S. 1909, Sec. 3757. The statute authorizes the county court to determine the State license tax a dramshop keeper must pay at any amount between $100 and $200 for every period of six months, and thereby makes it possible for a county court to fix the State license tax in one county at $200 per annum and at $400 in another—a very wide discretion. R. S. 1909, sec. 7199. That discretion was lodged in the county court long before the Constitution of 1875 was framed. 1 R. S. 1855, p. 684, sec. 9. And the statute authorizes the county court to determine the amount of poll tax, which may be between three and six dollars. R. S. 1909, sec. 10472. And the same power is vested in the township boards in counties under township organization. R. S. 1909, sec. 11758. And the Constitution itself gives the county court the right to fix the rate of tax at anything below a certain maximum amount for county purposes (Sec. 11, art. 10, Constitution); and at any rate it may choose below twenty-five cents on the $100 valuation for roads and bridges (Sec. 22, art. 10, Constitution). (g) The words of Sec. 43, Art. 4, Constitution, declaring that "all revenue collected and moneys received by the State from whatever source," must be read in connection with its context, the whole section and article in which it is found. State ex rel. v. Breuer, 235 Mo. 251. When read in that connection it is apparent: (1) that the whole article is dealing with legislative powers, or, as is expressed in the subhead on page 72, with "Limitation on Legislative Powers," over the revenue that comes into the State treasury; (2) that section 43 was dealing with appropriations and the order of appropriations to be made by the General Assembly; and (3) that its primary purpose was to inhibit a diversion of the State's money to any private purpose. For instance, if the Collateral Inheritance Act had authorized the county collectors to pay the moneys collected by them to the treasurer of the State University

or to relator itself, it would have contravened this section of the Constitution, which was designed to prevent that very thing and similar things by providing that the State revenues should be paid into the State treasury; but it never was designed thereby to render invalid all existing statutes and all subsequent statutes which authorized county collectors to deduct from the amount of State property and license taxes collected by them their statutory commissions and other necessary expense for making such collections. Shaver v. Robinson, 59 Ala. 195; Allegheny Co. v. Stengel, 213 Pa. 494. (h) It would be giving to section 43 a sour, narrow and absurd construction to now hold that the entire State tax collected by a county collector or a county clerk, without any deduction of the commissions or fees which the statute allows them for collecting the same, must be paid into the State treasury, and that before they can be compensated for their services the General Assembly must, by a specific appropriation, authorize the State Auditor to draw his warrant on the State treasury for the amounts due them. To so hold would be to stick in the bark. It would be to surrender the spirit to the letter. There is no evil to be remedied by any such holding. On the contrary, such a holding would upset the whole revenue machinery of the State and would bring painful confusion into the system of collecting State taxes, for, if that is what the Constitution means, no county collector could receive one dollar for his services in collecting a State property or license tax for the two preceding years until after the General Assembly had met and adjourned. The courts do not give to the Constitution an absurd or useless construction. State ex rel. v. Cook, 178 Mo. 189; Ex parte Conrades, 185 Mo. 411.

VALLIANT, C. J.—Relator prays a writ of mandamus to issue to respondent, the collector of revenue

of Clinton county, requiring him to pay into the State treasury $174.69, being part of the money collected by him under the statute which imposes an inheritance tax, and which was paid out by him as compensation for services rendered by an attorney employed in the collection of the tax under the provisions of section 329, Revised Statutes 1909. That section provides that: "In proceedings to which any county collector is cited as a party under section 322 of this article, the State Auditor is authorized, in his discretion, to designate and retain counsel to represent such county collector therein, and to direct such county collector to pay the expenses thereby incurred out of the funds which may be in his hands on account of this tax." The relator's contention is, first, that "the county collector was not cited as a party under section 322," and therefore the condition under which the statute authorized the employment of counsel did not exist, and, second, the statute authorizing the collector to pay the expenses incurred for services rendered under such retainer is in violation of section 43, article 4, of the Constitution.

Let us first look at the statute and see what it requires, then turn to the facts and see if they meet the requirements. "Section 322. The probate judge of the court having jurisdiction of the estate of the decedent, upon the application of any interested party, including county collectors, or upon his own motion, shall, as often and whenever occasion may require, appoint a competent person as appraiser to fix the valuation of estates which shall be subject to the payment of any tax imposed by this article. Every such appraiser shall forthwith give notice by mail to all persons known to have a claim or interest in the property to be appraised, including the county collector of revenue, and to such persons as the probate judge may by order direct, of the time and place when he will appraise such estate or property."

The section then goes on to direct how he shall proceed to make the appraisement, authorizing him to issue subpoenas for witnesses, etc., and report his appraisement in writing to the probate judge, with the evidence on which it is founded.   The section then provides that for his services the appraiser shall be paid three dollars a day and his travelling expenses and witnesses' fees, all to be paid by the county collector out of funds in hand derived from this inheritance tax.

The next section prescribes the duty of the probate judge in reference to the appraisement.   The next section authorizes proceedings to be taken by the State Auditor if he believes the appraisement of the estate or assessment of the tax to have been fraudulently, collusively, or erroneously made, under which proceedings the circuit judge may appoint an appraiser, who shall possess the same powers as are given the appraiser to be appointed by the probate judge under section 322, and receive the same pay for his services out of the inheritance tax.   The provisions of the next four sections are not in question in this suit.

Section 329 authorizes the prosecuting attorney of the county on representation of the county collector, and finding probable cause to believe that such a tax is due and unpaid, to apply to the probate court "for a citation citing the persons liable to pay such tax to appear before the court on the day specified, not more than three months after the date of such citation and show cause why the tax should not be paid." That is the only call for a writ of citation that we find in either of these sections.   Then follow directions for proceedings in the probate court on the return of the writ, and provision is made for paying the expenses of that proceeding out of the funds arising from this tax.   Then comes the closing sentence which we have hereinabove quoted authorizing the State Auditor to retain counsel to represent the county collec-

tor in proceedings in which he "is cited as a party under section 322 of this article."

There is no call for a citation in section 322, the only means provided for bringing the county collector before the appraiser is a written notice to him by mail.

Now let us turn to the facts in the case.

When the probate judge found that there was an estate in his county liable to this collateral inheritance tax he appointed an appraiser, as section 322 required, to fix the valuation of the estate. That appraiser immediately gave "notice by mail to all persons known to have a claim or interest in the property to be appraised, including the county collector of revenue . . . of the time and place when he will appraise such estate or property." The State Auditor appointed counsel to appear at that proceeding and represent the county collector, which he did. The valuation placed on the property by that appraisement was $110,800, and on that the probate court fixed the amount of the tax at $5266.80, which the county collector collected and, before paying the same into the State treasury, deducted therefrom $174.69, as directed by the Auditor, and paid the same to the attorney who represented him in the appraisement.

The purpose of this suit is to require the county collector to pay that $174.69 into the State treasury.

I.  Relator's first point turns on the meaning of the word "cited" as used in the last clause of section 329 above quoted, relator contending that the word is used in a technical sense and means served with a writ of citation, respondent contending that it means notified by mail of the time and place appointed for the appraisement as required by section 322.

Section 8057, Revised Statutes 1909, prescribing rules for the interpretation of statutes directs that

"words. and phrases shall be taken in their plain or ordinary and usual sense, but technical words and phrases having a peculiar and appropriate meaning in law shall be understood according to their technical import." The word "cited" is a technical word, and among its technical meanings is that which the relator claims should be given it in this case. A citation in its technical sense is a writ issuing out of a court; it is not an original writ instituting a suit, but it issues in a matter pending in court to notify a party interested that certain proceedings in that matter are to be considered. It is a proper writ to issue out of a probate court in which an estate is being administered. [2 Words and Phrases, p. 1164.] But when a technical word is inappropriately used in a statute and when to give it its technical meaning would entirely defeat the purpose of the lawmaker, if another meaning can with reasonable certainty be gathered from the whole context and the purpose of the statute be thereby effected, the word must be given that meaning.

If we should give to the word "cited" as here used the meaning contended for by relator it would destroy that whole clause of the statute. If we should say that the statute means to give the State Auditor authority to retain counsel to represent the collector only when the collector has been served with a writ of citation under section 322, then we would by interpretation wipe that clause of the statute off the books, because section 322 does not provide for the issuance of a writ of citation to the county collector under any circumstances, it only requires the appraiser to give him notice by mail, and that notice is what the statute refers to when it says "cited" under section 322.

The word "cited" is not limited, even in its technical meaning, to being served with a writ of citation; its meaning, among others, is, notified of a legal proceeding (Black's Law Dictionary), and that is the sense in which it is used in this statute.

It is argued by the learned counsel for relator
that, whilst the amount in controversy in this case is
small, yet the principle involved is of great importance,
because if this authority be conceded to the State Au-
ditor, it is liable to such an abuse as would cause a
large diminution of the collateral inheritance tax. That
is an argument more appropriate to the General As-
sembly than to the court. The statute in question has
been on our books for more than ten years, and if abuse
had been practiced it is likely the attention of the Gen-
eral Assembly would have been called to it.    At all
events there is no suggestion of abuse of the power in
the case before us, and we cannot consider that argu-
ment.

II.   Is the statute which authorizes the payment
of reasonable expenses incurred in the collection of
this inheritance tax out of that fund while yet in the
hands of the county collector a violation of section 43,
article 4, of the Constitution?   That section is in these
words:   ''All revenue collected and moneys received
by the State from any source whatsoever shall go into
the treasury, and the General Assembly shall have no
power to divert the same, or to permit money to be
drawn from the treasury, except in pursuance of reg-
ular appropriations made by law.''   The language is
ample to cover not only all revenue derived from gen-
eral taxation, but moneys collected by authority of the
State from any source whatsoever; it therefore cov-
ers moneys derived from the collateral inheritance tax.
It does not apply in a different force or degree to one
than to the other.   If the literal construction contended
for by relator is to be applied to this section, then it
means that the General Assembly cannot authorize by
statute the payment of fees to any officer or agent out
of the money he may collect for the State, but he must
pay it all into the treasury, and wait until the General
Assembly meets and makes an appropriation to pay

him for his services. That has never been the course
of dealing between the State and the collectors of its
general revenue or of its other taxes. The officers
making the collections have always been permitted to
retain the fees fixed by statute as their compensation;
such was the course of dealing when the present Con-
stitution was adopted, it had been for many years be-
fore, and it has been so ever since.

Relator seems to concede that such has been the
practice, but it seeks to draw a distinction between
fixed fees and fees that are to be fixed. If we are go-
ing to adhere to the letter of this section we must say
that it applies to fixed fees as well as fees to be fixed;
if we say that it does not apply to fixed fees that have
long been allowed, then we depart from the letter and
inject an exception by interpretation, and if we make
an exception of one for a certain reason we should
make an exception of another that comes under the
same reason. The convention which framed our Con-
stitution was composed of men who knew what the law
on this subject then was and if they had understood
that this section was liable to be construed as applying
to the payment for services rendered in collecting the
revenue they would doubtless have made some pro-
vision to meet that condition, because payment for
such services out of the funds before they were paid
into the treasury had always been allowed by statute,
and also because it would naturally impede or hinder
the State in collecting its revenue unless such pay-
ments were so allowed.

The reason for allowing the county collector to
retain his commissions is that his services were nec-
essary in collecting the tax, and that reason applies
as well to the services of the legal counsel in the col-
lection of the inheritance tax as it does to the serv-
ices of the collector. We do not say that the one is as
necessary as the other, because the services of the col-
lector are indispensable in every instance, whilst the

services of an attorney may be necessary in some cases but not in others, therefore the statute has given the State Auditor authority to retain counsel only when in his judgment it is necessary, but when it is thus determined that the services are necessary there is no more reason for allowing the collector to retain his commissions out of the fund collected than there is for the payment of the attorney out of the same fund. It has always been the policy of the State to allow payment out of taxes collected not only to the county collector of general taxes, but to the officer intrusted with the issuance of licenses and the collection of license taxes, and if we should now give to section 43, article 4, the construction contended for by relator we would not only overturn a settled policy, but bring confusion in the collection of the revenues of the State. The General Assembly is forbidden by this section to divert from the State treasury the fund arising from the inheritance tax, but it is not a diverting of that fund for the General Assembly to provide for the payment of reasonable compensation for necessary services rendered in its collection.

The writ of mandamus is denied. All concur.